STATE of Wisconsin, Plaintiff-Respondent,

v.

John James KAYE, Defendant-Appellant-Petitioner.

Supreme Court

*No. 80–1042–CR. Argued January 7, 1982.—
Decided February 2, 1982.*

(Also reported in 315 N.W.2d 337.)

2

For the defendant-petitioner there were briefs and oral argument by *William J. Tyroler*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

BEILFUSS, C. J.   This is a review of a decision of the court of appeals, affirming a judgment of conviction and sentence on two counts of arson as a party to the crime.

The court of appeals rejected the defendant Kaye's argument that he was denied effective assistance of counsel at sentencing because his attorney also represented his codefendant, Arthur Beiersdorf.

Kaye was charged, along with Beiersdorf, as party to the crime on two counts of arson in violation of secs. 943.03 and 943.02(1)(a), Stats. 1977.[1]   The charges arose from two incidents on November 18, 1978, in which the two defendants were alleged to have burned two garages and a car parked within each garage. Both defendants pleaded guilty pursuant to a plea bargain. They were both represented by the same attorney, Jack Goldberg.   Under the terms of the plea bargain, it was agreed that the State would read in, for the purposes of

---

[1] "943.03 **Arson of property other than building.**  Whoever, by means of fire, intentionally damages any property (other than a building) of another without the person's consent, if the property is of the value of $100 or more, is guilty of a Class E felony."

"943.02 **Arson of buildings; damage of property by explosives.** (1) Whoever does any of the following is guilty of a Class B felony:

"(a) By means of fire, intentionally damages any building of another without his consent."

sentencing, two other counts of arson as to Beiersdorf and eight others as to Kaye.[2]

A factual foundation was laid by Milwaukee Detective Edward Stenzel, who conducted the investigation. He testified that the defendants told him that they intended to siphon gasoline out of one of the cars, but became upset when they were unable to do so and started a fire in the car which spread to the garage. They then proceeded to the second garage and started another fire which destroyed the car and garage. In response to a direct question, Detective Stenzel testified that Kaye told him that he had been ready and willing to render assistance to Beiersdorf in starting the fires and did, in fact, assist Beiersdorf in starting them. In the course of the investigation, Kaye was questioned regarding other suspicious fires in the area. He admitted starting the six other fires which were read in for sentencing purposes. Stenzel testified that Kaye rode with another officer and pointed out the various houses where he had set the six fires. There were police reports corroborating the fact that fires had occurred at the locations pointed out by Kaye.

After pleading guilty to the two counts of arson, Kaye also admitted committing the eight read-in arsons. However, at the sentencing hearing, some six weeks later,

_____

[2] The two read-ins against Beiersdorf, and two of the eight against Kaye, arose from the same incidents on November 18, 1978, on which the actual charges against these defendants are based. This can occur because the burning of a garage and a car within it may give rise to two counts of arson—one under sec. 943.-02(1)(a), Stats., for the burning of the building, and one under sec. 943.03 for the burning of the car. In this case, two garages, each containing a car, were burned. The defendants pleaded guilty to burning the first garage, and the car within the second garage. The arsons of the second garage and the car within the first garage were read in as to both defendants for the purposes of sentencing.

Kaye denied committing the six other fires which ac-counted for six of his eight read-ins. He did again admit that he was guilty of the two arsons with which he was charged. The trial court was obviously skeptical of this attempted retraction and suggested the prosecutor charge Kaye with the other six arsons. The prosecutor indicated that there probably would be insufficient cor-roborating evidence to charge Kaye with these six arsons.

Attorney Goldberg argued that Kaye should be given probation with psychiatric treatment. He characterized Kaye as "somewhat mentally ill," explaining that Kaye's sister had been murdered a year-and-a-half earlier and that Kaye began starting fires after her death. The trial court rejected the idea of giving Kaye probation. The court examined Kaye's previous criminal record and sentenced him to one year and six months on the first count and eight years consecutive on the second count. The court stated that Beiersdorf's record was less seri-ous than Kaye's and sentenced him to one year and six months on the first count and five years concurrent on the second count.

Kaye filed a pro se motion for postconviction relief with the trial court pursuant to sec. 974.06, Stats. 1977. This motion alleged that the conviction was illegal due to several violations of the defendant's constitutional rights. Among these, Kaye claimed that the police offi-cers had illegally entered his apartment in order to arrest him, that the police tricked him into pleading guilty by promising him a light sentence or probation, and that he was not allowed to consult an attorney dur-ing portions of his interrogation. The trial court denied this motion on August 24, 1979.

On March 18, 1980, the defendant filed a second mo-tion for relief under sec. 974.06, Stats. 1977. On this

occasion the defendant had the assistance of the public defender. The basis for the motion was that Kaye was denied his constitutional right to the effective assistance of counsel at sentencing. Kaye contended that he was less culpable than Beiersdorf, but that his attorney was prevented from making this argument because he also represented Beiersdorf. Due to this conflict of interest, Attorney Goldberg was unable to put forth the plausible argument that Kaye should receive a lighter sentence because he was less culpable than Beiersdorf. Kaye claimed that his version of the crime, as contained in a police report, indicated that he merely accompanied Beiersdorf and that Beiersdorf actually took the initiative in planning and executing the crimes. In an affidavit supporting this motion, Kaye stated that he only accompanied Beiersdorf because he was afraid that Beiersdorf would "exert violence" against him if he refused to go along.

A hearing on this motion took place on May 2, 1980. The defendant did not argue that the guilty plea should be withdrawn, but rather that he was entitled to resentencing because of his counsel's conflict of interest at his original sentencing hearing. Again the trial court denied the motion.

The defendant appealed the denial of the motion to the court of appeals. In a per curiam decision, the court of appeals affirmed the trial court's denial of the motion for resentencing. The court held that Kaye had not shown any actual conflict of interest. The contention that Goldberg was prevented from arguing Kaye's lesser culpability because of his representation of Beiersdorf was termed "pure speculation and based on mere possibilities." The defendant petitioned this court for review of the decision of the court of appeals and on August 13, 1981, we granted the petition.

The parties disagree in this case on what a defendant must show on appeal when no objection is made at trial to counsel representing multiple defendants. Both parties agree that the recent United States Supreme Court decision of *Cuyler v. Sullivan*, 446 U.S. 335 (1980), sets forth the test to determine when a defendant has been denied his Sixth Amendment right to counsel because of a conflict of interest on the part of his attorney. Under *Sullivan* a defendant must "demonstrate that an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 348. However, this test may be somewhat ambiguous, as pointed out in Justice MARSHALL'S dissent in *Sullivan*. Kaye contends that, according to *Sullivan*, he need only show a divergence of interests between the defendants and a relinquishment by counsel of a plausible argument which would have aided one defendant but harmed the other. The State, on the other hand, argues that the defendant must show that the attorney's performance differed from what it would have been if the attorney had not represented the other defendant. We believe that the defendant's position is closer to the actual test and that, on the record before us, the defendant has not shown the existence of an actual conflict.

Neither this court nor the United States Supreme Court has ever held that representation by one attorney of multiple defendants constitutes a per se violation of the right to counsel of the defendants. *Cuyler v. Sullivan, supra,* 446 U.S. at 348; *State v. Koller,* 87 Wis. 2d 253, 261, 274 N.W.2d 651 (1978). This is true despite the fact that a potential conflict of interest inheres almost every time an attorney represents more than one defendant. This potential conflict is perhaps strongest at the sentencing stage. Defendants invariably differ in

either their claimed relative culpability, or in other relevant factors that enter into a sentencing decision, such as previous criminal records, education, age, employment status, intelligence, degree of contrition, and other factors. In short, it is clear that a lawyer representing more than one defendant can almost always emphasize certain factors about one defendant in an effort to minimize his sentence. If his co-defendant does not possess these same factors, then a potential conflict of interest appears. However, we have held that more than such a potential conflict of interest must be shown.

Recent decisions of this court have set forth the standard which a defendant must meet in such cases:

"In order to establish that he was denied effective representation by counsel, Medrano must establish by clear and convincing evidence that an actual conflict of interest existed. *Hall v. State*, 63 Wis. 2d 304, 311, 217 N.W.2d 352 (1974). It is not sufficient that he show that a mere possibility or suspicion of a conflict could arise under hypothetical circumstances. *Harrison v. State*, 78 Wis. 2d 189, 201, 254 N.W.2d 220 (1977). However, Medrano does not have to show actual prejudice; once he shows an actual conflict he is entitled to relief. *Hall,* 63 Wis. 2d at 311–312.

"The fact that one attorney represents more than one defendant is not in itself a conflict of interest and the attorney is entitled to represent more than one defendant unless the interest of the defendants is shown to be in conflict. *Mueller v. State*, 32 Wis. 2d 70, 77, 145 N.W.2d 84 (1966)." *State v. Medrano,* 84 Wis. 2d 11, 28, 267 N.W.2d 586 (1978).

We read *Cuyler v. Sullivan*, 446 U.S. 335 (1980), as imposing a test very similar to the one adopted by this court. *Sullivan* requires proof that an "actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348. We do not interpret this language as meaning that a defendant must first show an actual conflict and

then prove that some kind of specific adverse effect or harm resulted from this conflict. This would be logically inconsistent with the rule in *Sullivan* and previous supreme court cases that a defendant need not demonstrate prejudice in order to obtain relief. *Sullivan, supra,* at 349; *Holloway v. Arkansas,* 435 U.S. 475, 490 (1978). Therefore, we disagree with the State's argument in the present case that a defendant must prove that his attorney's performance would have been different if he had only represented one of the defendants. This seems to be a nearly impossible burden to meet. The harm to a defendant necessarily follows once it has been demonstrated that his lawyer actively represented a conflicting interest. A defendant's constitutional right to the effective assistance of counsel certainly includes the guarantee that his counsel not proceed when there appears to be an actual conflict of interest. We think this is what the court meant in *Cuyler v. Sullivan,* when it wrote, "But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." 446 U.S. at 350.

Although we generally agree with defendant's statement of the law, we find that the record in this case fails to show an actual conflict of interest. Kaye's arguments to this court all rest upon the assumption that an actual conflict of interest has been proven to exist by clear and convincing evidence. But an analysis of the record shows that this is not the case. Attorney Goldberg pursued a reasonable and consistent line of argument in attempting to obtain a less severe sentence for Kaye. The argument that he did not make, namely that Kaye was less culpable than Beiersdorf and should therefore receive a lesser sentence, was weak, implausible, and

would have detracted from the argument actually made by Goldberg. We cannot conclude that a failure to make this argument demonstrates that Goldberg acted under a conflict of interest.

In attempting to argue for Kaye at his sentencing, Goldberg was confronted with several problems. The most important was how to deal with the six other fires to which Kaye had several times confessed. Combined with the two fires to which he pleaded guilty, this made a total of eight fires within the last year-and-a-half. Added to this was the problem of Kaye's credibility. At the sentencing hearing he denied committing the read-ins, although he had previously admitted them to several police officers, the judge, and his attorney. The judge was understandably skeptical of this attempted retrac-tion and reminded Kaye that he was under oath and that the penalties for perjury were severe. When Kaye stated that he had only confessed to the six other fires because a detective had promised aid in obtaining probation, the judge indicated his disbelief. Even after denying these six fires, Kaye still admitted that he was guilty of the two arsons with which he was charged.

Goldberg attempted to account for Kaye's behavior by arguing that he had some type of mental disorder stem-ming from his sister's murder. Goldberg argued that this mental problem was responsible for Kaye's incon-sistent statements and for the fires he started. He stated that Kaye should receive psychiatric examinations and treatment.

The defendant has argued that Goldberg revealed a client confidence when he told the court of Kaye's in-consistent statements and admitted that Kaye had ear-lier told him that he had started the six other fires. The defendant claims this betrayal of his client's trust clearly resulted from Goldberg's conflict of interest. This is not a valid criticism in this case. Ordinarily, an attorney

should not reveal his client's confidences. But in this case Goldberg did not reveal anything new. Kaye had previously admitted to several police officers and to the judge that he had started other fires. Goldberg did not introduce Kaye's inconsistent statements; he simply tried to account for them. His explanation was that Kaye had been living with his sister when she was strangled one-and-a-half years before, and that he had been mentally disturbed since that time. He began setting fires after her death. This line of argument was consistent with the facts and provided a plausible basis on which Goldberg could ask for psychiatric treatment and counseling for Kaye, instead of a prison sentence. Merely because the judge did not accept Goldberg's argument is no indication that the other potential argument should have been made or would have been made beneficial to Kaye.

In fact, the record reveals that the argument that Kaye was less culpable than Beiersdorf could have been a weak and implausible argument. Kaye contends that his statements in a police report establish that Beiersdorf was more culpable and that he simply accompanied Beiersdorf. Kaye now states that he only accompanied Beiersdorf because he was afraid Beiersdorf would hurt him if he refused. There are several problems with this reliance on the police report. First, the report contains only Kaye's side of the story and there is an obvious incentive for him to minimize his role in the crimes. Secondly, Kaye's later affidavit, made while in prison and stating that he accompanied Beiersdorf out of fear, is never corroborated by any earlier statements by Kaye. There is no evidence of his ever mentioning this to his attorney or to any of the police officers. This is somewhat unusual, since if such a statement had been made and believed, it would have been a good defense to the charges against him. Such a claim, made only at this

late date, smacks of an afterthought to bolster Kaye's motion for relief. Furthermore, it is inconsistent with the statements actually made in the police report. According to this report, Kaye initially refused to accompany Beiersdorf when Beiersdorf wanted him to help steal a part for his car. Kaye now claims that he was afraid to refuse to accompany Beiersdorf. It may also be inferred from the police report that it was actually Kaye's idea that they go to siphon some gasoline. Thus even on the sole basis of the police report, on which defendant's entire case rests, Kaye's argument is not persuasive.

Equally important is the fact that there are at least two other versions of the incidents, besides the one contained in the police report, and these versions do not support Kaye's argument. The criminal complaint, signed by Detective Stenzel, contains Beiersdorf's version of count one, implying that Kaye was the more culpable of the two. It also contains Kaye's version of the second count which does not indicate that either defendant was more culpable. The other version of the facts is found in Stenzel's testimony, given for the purpose of providing a factual foundation for defendant's guilty pleas. Stenzel specifically stated that Kaye had told him that he was with Beiersdorf and took an active role in assisting him in starting the fires. Finally, Kaye repeated to Judge Seraphim on several occasions that he was guilty of the two charges. Even when he attempted to retract his admission of the six other arsons, he still admitted his guilt on the two charges. Thus, even if the police report supported Kaye's claim of lesser culpability, it is contradicted at several other points in the record.

From our perspective, it seems that Goldberg made a well considered decision not to put forth the argument Kaye now makes. The trial court was very skeptical

about Kaye's credibility and, in view of Kaye's obvious self interest in arguing that Beiersdorf was more culpable, it is highly unlikely that such an argument would have succeeded. But more importantly, to put forth such an argument would have been somewhat inconsistent with the argument Goldberg actually made and would have weakened it. Goldberg's argument was based on Kaye's mental problem and sought to explain his inconsistent statements, as well as the six read-in arsons. He sought to depict Kaye as a sick person who was somehow compelled to start these fires. This is not logically consistent with the argument that Kaye went along with Beiersdorf on these two arsons because he feared Beiersdorf. The whole thrust of Goldberg's argument was that Kaye was mentally disturbed and needed psychiatric treatment. We have already indicated that this seems a far stronger argument than the lesser culpability argument. If Goldberg had included the lesser culpability argument, it would only have weakened the argument he actually made. Merely because the trial judge rejected the argument that was made and sentenced Kaye to prison does not prove the existence of a conflict on the part of his attorney. The question is whether it can be proven, on the basis of the record, that the two defendants had divergent positions and that their lawyer failed to make a plausible argument that would have benefited one and harmed the other. This record does not support such a claim.

Although no conflict of interest was proven in this case, we realize the difficulty in proving such conflicts when no objection is made at trial. What constitutes an actual conflict, as opposed to the potential conflict always present with multiple representation, is a difficult question which must be resolved by looking at the facts of an individual case. It is highly unlikely that an attorney would testify that he was laboring under a conflict

of interest; this would be an admission of a violation of his ethical duties to his clients. Thus, if no objection is made at trial, evidence of a conflict must be found in the record. Admittedly it may be difficult to establish by clear and convincing evidence from the record that a conflict existed.

To avoid such problems in the future, we will require trial courts to conduct an inquiry whenever the same attorney or law firm represents more than one defendant in the same criminal case. The court should inquire of the defendants and their attorney at the arraignment as to the possibility for actual conflicts of interest. The judge should ensure that the defendants understand the potential conflicts and determine whether they want separate counsel. If the defendants insist on being represented by the same counsel, after being fully advised of the potential problems, the trial judge should permit such multiple representation. However, this determination should not be made unless it is clear the defendants have made a voluntary and knowing waiver of their right to separate counsel.

The attorneys should also be mindful as to their ethical duties not to undertake the representation of clients with actual or potential conflicting interests. Sec. 4–3.5 (b) of the ABA *Standards for Criminal Justice* (2d ed.), The Defense Function, states:

"(b) Except for preliminary matters such as initial hearings or applications for bail, a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several codefendants except in unusual situations when, after careful investigation, it is clear that:
"(i) no conflict is likely to develop;

"(ii) the several defendants give an informed consent to such multiple representation; and

"(iii) the consent of the defendants is made a matter of judicial record. In determining the presence of consent by the defendants, the trial judge should make appropriate inquiries respecting actual or potential conflicts of interest of counsel and whether the defendants fully comprehend the difficulties that an attorney sometimes encounters in defending multiple clients.

In some instances, accepting or continuing employment by more than one defendant in the same criminal case is unprofessional conduct."[3]

The ABA *Standards for Criminal Justice*, Sec. 4–3.5 (b), is adopted. The directions to the trial court to make inquiries as to possible conflicts of interest in multiple representation by counsel, and a voluntary and knowing waiver by multiple defendants and record of the same, shall be applied prospectively to all arraignments occurring after July 1, 1982.

The procedure to be followed is similar to Rule 44(c) of the Federal Rules of Criminal Procedure.[4] We are concerned about the dangers of multiple representation and believe that this rule will do much to avoid the problems associated with it.[5] However, we also believe

---

[3] *Also see* Code of Professional Responsibility, SCR 20.23(3) (1980).

[4] "(c) **Joint Representation.** Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel."

[5] *See also State v. Olsen*, 258 N.W.2d 898 (Minn. 1977).

that it is essential that a defendant be allowed to be represented by counsel of his choice. We therefore disagree with the result in *United States v. Flanagan,* 527 F. Supp. 902 (E.D. Pa. 1981), where the district court refused to allow defendants to be represented by the law firm they had chosen because of the potential that the defendants' interests would be conflicting. We believe that if the defendants knowingly waive their right to separate counsel and insist on having the same counsel, who agrees to represent them, then their wishes should be respected. All a court can do is to make certain the defendants are aware of the risks. If they insist on their chosen counsel then the court should not interfere.

*By the Court.*—The decision of the Court of Appeals is affirmed.