STATE of Wisconsin, Plaintiff-Respondent,

v.

Anne M. MILLER, Defendant-Appellant.

Supreme Court

*No. 89–2054–CR. Argued January 4, 1991.—Decided April 1, 1991.*

(Also reported in 467 N.W.2d 118.)

648

For the defendant-appellant there were briefs (in the court of appeals) by *Nikola P. Kostich,* Milwaukee and oral argument by *Nikola P. Kostich.*

For the plaintiff-respondent the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief (in the court of appeals) was *Donald J. Hanaway,* attorney general.

SHIRLEY S. ABRAHAMSON, J. This is an appeal from an order entered by the circuit court for Door county, S. Dean Pies, Circuit Judge, disqualifying Attorney Nikola Kostich from representing the defendant. The court of appeals granted the defendant leave

to appeal from this non final order; this court took the case upon certification by the court of appeals. Sections 808.03(2) and 808.05(2), and sec. (Rule) 809.61, Stats. 1989-90.

The issue presented in this case is whether the circuit court erred in disqualifying the defendant's chosen counsel despite the defendant's waiver of the right to conflict-free counsel. We conclude that the circuit court may, in its discretion, disqualify counsel of a criminal accused, even over the accused's objection and proffered waiver of the right to conflict-free representation, when an actual or a serious potential for conflict of interest exists. We conclude that the circuit court did not abuse its discretion in this case, and we affirm the order of disqualification.

The relevant facts of the case are as follows. The defendant was charged with possession of cocaine with intent to deliver and maintaining a dwelling for the delivery of controlled substances. Approximately two months before trial, the defendant expressed her dissatisfaction with Attorney Thomas Reynolds' representation and sought to substitute Attorney Kostich as her counsel. The state opposed the defendant's motion to substitute counsel because Attorney Kostich was simultaneously representing James Gordon on pending charges of possession of marijuana and maintaining a dwelling for the manufacture of controlled substances.

The charges against the defendant arise from a search of her home. Acting on a tip from an informant, a Door county deputy sheriff ascertained that a small brown package from Florida was to be delivered to the defendant's address on January 18, 1989. A canine sniff of the package revealed that it contained a controlled substance. Tests later showed the substance was cocaine.

Immediately before executing the warrant for search of the defendant's home on the afternoon of January 18, 1989, the deputy sheriff observed the defendant drive up to her residence and take the package from the mailbox. Gordon was a passenger in the defendant's vehicle and was present during the search of the defendant's home. The Door county district attorney filed an information against the defendant based on the search, charging her with possession of cocaine with intent to deliver, maintaining a dwelling for the delivery of controlled substances, and conspiracy to deliver cocaine. The conspiracy count was dropped for lack of probable cause at the defendant's preliminary hearing.

On the basis of the same search, the district attorney filed similar charges against Gordon, but they were dismissed at Gordon's preliminary hearing.

The day after the defendant's home was searched, Gordon's home was searched pursuant to a warrant. In a separate complaint, Gordon was charged with manufacture of marijuana, maintaining a dwelling for the manufacture of a controlled substance, and possession of a switchblade knife. Gordon retained Attorney Kostich to represent him on these charges.

On September 28, 1989, the defendant advised Attorney Reynolds that she wished to retain another attorney. Apparently the defendant wished to retain Attorney Kostich. Attorney Reynolds was unable to reach the circuit judge that day and spoke only to the district attorney about the defendant's request. On the same day the district attorney issued a subpoena for Gordon to testify at the defendant's trial, then two months away.

Attorney Reynolds discussed substitution of counsel with the circuit court at a motion hearing heard as scheduled on September 29, 1989. The circuit court

requested briefs on the issue of substitution and held a hearing on the defendant's motion for substitution of attorney on October 13, 1989. On October 24, 1989, the circuit court issued an order disqualifying Attorney Kostich from representing the defendant.

The question we consider in this case is whether the circuit court erred in disqualifying the defendant's chosen counsel on the basis of a serious potential conflict of interest despite the defendant's waiver of the right to conflict-free counsel.

The sixth amendment guaranty of assistance of counsel includes a qualified right to representation by counsel of the accused's choice. Although the right to counsel of choice is not absolute,[1] the United States Supreme Court concluded in *Wheat v. United States,* 486 U.S. 153, 164, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988), that a presumption exists in favor of an accused's counsel of choice. The *Wheat* court further determined that although an accused may make a knowing and voluntary waiver of the right to conflict-free representation, the accused's waiver of the right to a conflict-free attorney does not render the presumption in favor of the

---

[1]This court has acknowledged limitations on the right to counsel. As we said in *Phifer v. State,* 64 Wis. 2d 24, 29–30, 218 N.W.2d 354 (1974):

> The sixth amendment to the United States Constitution provides that in all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense. However, the amendment does not concern itself with who the counsel may be or how the counsel may be selected . . . the accused's right to select his own counsel cannot be manipulated so as to obstruct the orderly procedure for trials or to interfere with the administration of justice.

*See also, Mulkovich v. State,* 73 Wis. 2d 464, 474, 243 N.W.2d 198 (1976).

accused's counsel of choice irrebuttable or foreclose further judicial inquiry.

The United States Supreme Court determined in *Wheat* that the presumption in favor of the accused's counsel of choice may be overcome and the trial court need not accept an accused's waiver of the right to a conflict-free attorney when the state demonstrates the defense attorney's actual conflict of interest or shows "a serious potential for conflict." *Wheat,* 486 U.S. at 164.

When an actual conflict or serious potential for conflict of interest exists, the United States Supreme Court has concluded that legitimate countervailing institutional interests overcome the presumption in favor of the accused's counsel of choice. An actual conflict or serious potential for conflict of interest imperils the accused's right to adequate representation and jeopardizes the integrity of the adversarial trial process and the prospect of a fair trial with a just, reliable result.[2] The United States Supreme Court has thus balanced the sixth amendment rights of the accused against the judicial system's institutional interests to conclude that the accused's right to choose counsel is not absolute and a

---

[2]The United States Supreme Court enumerated three institutional interests that are jeopardized by a criminal defense attorney who has an actual or serious potential conflict of interest: First, a court's institutional interest in ensuring that "criminal trials are conducted within the ethical standards of the profession." *Wheat,* 486 U.S. at 160. Second, a court's institutional interest in ensuring that "legal proceedings appear fair to all who observe them." *Id.* Third, a court's institutional interest that the court's "judgments remain intact on appeal" and be free from future attacks over the adequacy of the waiver or fairness of the proceedings. *Id.* at 161.

trial court may disqualify defense counsel in those cases in which counsel has an actual conflict or "serious potential for conflict."

The Court in *Wheat* cautioned trial courts to be alert to the possibility that the government may seek to "manufacture" a conflict to eliminate a formidable lawyer as an adversary and to prevent a defendant "from having a particularly able defense counsel at his side." *Wheat,* 486 U.S. at 163. The Court urged trial courts to take this possibility "into consideration along with all of the other factors which inform this sort of a decision." *Id.* We repeat these admonitions so that circuit courts will be sensitive to the motives of the prosecutors and carefully explore this issue on the record in the exercise of its discretion to disqualify counsel.

With these teachings from *Wheat* in mind, we review the order of the circuit court in this case. The circuit court's disqualification order states that it found a serious potential for conflict.

■■

The standard for review of the circuit court's decision to disqualify defense counsel on grounds of a serious potential for conflict of interest is, according to the United States Supreme Court in *Wheat,* abuse of discretion. The circuit court's exercise of discretion is not the equivalent of unfettered decision-making. The circuit court must make a reasoned application of the appropriate legal standard to the relevant facts of the case and should state its reasoning on the record. A statement of the circuit court's reasoning on the record assures the parties and the circuit court that its decision was properly reached and assists an appellate court in reviewing the decision.

The defendant contends that the state has not shown either an actual or serious potential conflict of

interest as required under *Wheat* and has shown only a "speculative theory" to support the potential for conflict. The defendant's brief asks that we remand the case to require the state to provide complete, realistic and factual proof concerning the potential conflict, that we direct the circuit court to resolve the issue of granting immunity to Gordon, and that we authorize the circuit court to appoint an independent counsel to consult with the defendant. In the alternative the defendant asks that the order be vacated and that Attorney Kostich be authorized to represent the defendant.

The circuit court found that the defendant knowingly and voluntarily waived any potential conflicts of interest, that Gordon was not present to waive his potential conflicts of interest,[3] and that Attorney Kostich did not engage in any unethical behavior.

---

[3] In *Wheat*, unlike in this case, all parties to the alleged potential conflict made a fully informed waiver of their right to conflict-free representation.

The state's brief asserts in a footnote, without elaboration, that Gordon's failure to consent to Attorney Kostich's representation of the defendant in itself would provide a basis for sustaining the circuit court's order of disqualification. We do not address this issue.

The Rules of Professional Conduct for Attorneys require the clients' consent when the lawyer might not be able to provide conflict-free representation.

The Rules of Professional Conduct for Attorneys provide as follows:

SCR 20:1.7. Conflict of interest: general rule
(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents in writing after consultation.
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities

The circuit court concluded that there was a serious potential for conflict of interest but unfortunately did not set forth in the findings and order disqualifying Attorney Kostich the reasoning upon which the circuit court based its conclusion. The circuit court expressed its belief that some of the scenarios the state expounded to explain the potential conflict "may be speculative" but it found, citing *Wheat,* that some of the state's scenarios were "sufficiently strong" to override the defendant's freedom of choice of counsel. The circuit court never described the scenarios it found "speculative" or "sufficiently strong" to disqualify the defendant's counsel.

While the circuit court in this case did not adequately explain its exercise of discretion, this court can, however, examine the record and determine whether the facts support the circuit court's exercise of discretion. Again we emphasize that circuit courts should explain their discretionary decisions fully on the record.

The state asserts that the circuit court was justified in exercising its discretion to disqualify Attorney Kostich as defendant's attorney, arguing that a serious potential conflict of interest arises as follows:

(1) The prosecutor might consider granting Gordon immunity if he testified against the defendant. The state urges that Gordon's potential cooperation in the prosecution against the defendant and the defen-

to another client or to a third person, or by the lawyer's own interests unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

dant's potential cooperation in the prosecution against Gordon might be bargaining chips in plea negotiations. The state asserts that Attorney Kostich, by representing both the defendant and Gordon, would have to favor the interests of one client over the other in negotiating plea agreements.

(2) The state subpoenaed Gordon as a witness in the defendant's trial. The state argues the subpoena was issued in good faith and not, as the defendant contends, with an intent to disqualify Attorney Kostich.

Because the defendant and Gordon spent a great deal of time together at both homes, it is reasonable to infer, argues the state, that each knew a great deal about the other's activities at home and probably would have useful information for the prosecution. The charges against both the defendant and Gordon involved illegal drug activities in their respective homes.

The state argues on appeal that Attorney Kostich's representation of Gordon, including confidential information he received from Gordon, would inhibit his vigorous cross-examination of Gordon.

(3) The state asserts that the defendant might want to shift criminal responsibility to Gordon. The state argues that Attorney Kostich would have to favor the interests of one client over the other in organizing a proper defense. The package of cocaine was addressed to "A & M Enterprises, c/o Monk." During the search of Gordon's home the officers found a business card with the name of Monk, raising the possibility that the package was intended for Gordon. The state argues that Attorney Kostich, representing both the defendant and Gordon, would not be able to pursue this line of defense of accusing Gordon of being the perpetrator of the crimes of which the defendant was charged.

The defendant suggests that the prosecutor subpoenaed Gordon for improper motives, that is, as an excuse to disqualify her chosen counsel. The defendant notes that the state subpoenaed Gordon only after the defendant requested substitution of attorneys and two months before trial was to begin. The defendant questions the sincerity of the district attorney's claim that he wished Gordon to testify at her trial, since the district attorney did not know what Gordon's testimony might be and had not offered Gordon any plea agreement in exchange for testimony against the defendant. The defendant contends that under these circumstances the circuit court should have thoroughly investigated the district attorney's reasons for issuing the subpoena to determine whether Gordon's testimony was needed or admissible at trial.

The circuit court made no serious inquiry of the prosecutor regarding his intention to call Gordon to testify, what testimony he expected of Gordon, his ability to obtain the needed evidence from sources other than Gordon, and whether the state had begun negotiations with or intended to negotiate with either the defendant or Gordon to offer immunity to either of them. We emphasize, as the United States Supreme Court emphasized in *Wheat,* that the prosecutor's mere allegation of defense counsel's conflict of interest or subpoena of an attorney's client does not justify the circuit court's disqualifying defendant's attorney and that the circuit court must take care that the prosecutor not "manufacture" a conflict of interest.

After reviewing the record and considering the arguments, we conclude that the record supports the circuit court's conclusion that a serious potential conflict of interest existed. Attorney Kostich's representing both

658

the defendant and Gordon gave rise to a potential conflict of interest regarding any plea agreements, cross-examining Gordon as a witness, and adopting a line of defense implicating Gordon. These potential conflicts depended on the conduct of pre-trial negotiations and whether the state would grant immunity to either the defendant or Gordon in exchange for testimony. The results of such pre-trial negotiations—or whether they would even take place—might be influenced by Attorney Kostich's simultaneous representation of the defendant and Gordon. The potential conflict was serious because it might imperil the defendant's right to adequate representation and jeopardize the integrity of the trial process and the prospect of a fair trial with a just, reliable result.

The presumption favoring the defendant's right of choice of an attorney was overcome by a showing of a serious potential for conflict. Although *Wheat* does not require a trial court to disqualify an attorney on a showing of a serious potential for conflict, several factors support the circuit court's exercise of its discretion to disqualify Attorney Kostich in the circumstances of this case. Although the defendant's brief indicates that Attorney Kostich had previously represented the defendant, the record does not indicate that the defendant's relationship to Attorney Kostich was a close one or of long standing duration. According to the record Attorney Kostich had not performed substantial services for the defendant in this case. Nothing in the record indicates that the defendant could not obtain an alternative lawyer of like caliber or that disqualification of Attorney Kostich would cause unacceptable delay in the proceedings. We affirm the circuit court's exercise of its discretion to disqualify Attorney Kostich on the grounds of a serious potential for conflict of interest.

Our decision today requires us to reexamine our decision in *State v. Kaye,* 106 Wis. 2d 1, 315 N.W.2d 337 (1982). The issue in *Kaye,* unlike the issue in this case, was a post-conviction evaluation of an accused's claim that he was denied the effective assistance of counsel because his lawyer also represented a codefendant.[4] The *Kaye* court concluded that the record failed to show an actual conflict of interest and affirmed the conviction. After resolving that question, the court set forth a procedure that it believed would avoid conflict of interest problems in the future. The court directed circuit courts to inquire about the possibility of actual conflicts of interest, to ensure that the accused understands the potential conflicts, and to permit an accused who is fully advised of the potential problems to waive conflict-free representation when the same attorney or law firm represents more than one accused in the same criminal case.

The *Kaye* court did not face the question raised in this case, namely whether a circuit court can refuse to accept an accused's purported waiver of conflict-free representation when an actual or serious potential conflict of interest exists.

We are persuaded that it may be difficult to obtain a knowing and intelligent waiver of a conflict-free attorney when an actual or serious potential conflict exists and that institutional considerations for disqualifying the attorney may outweigh an accused's interests in waiving his right to a conflict-free attorney when an actual or serious potential conflict exists. We conclude that a circuit court should make inquiry as we directed in *Kaye* when counsel represents codefendants in the same crimi-

---

[4]In this case the two clients are not codefendants in the same case, and the conflict of interest issue arises before trial, not after conviction.

nal case or when a question of conflict of interest is raised in any criminal case about an accused's counsel of choice. We conclude that a circuit court may exercise its discretion to refuse to accept a waiver of conflict-free representation when there is an actual conflict or a serious potential for conflict. We overrule any language in *Kaye* that can be interpreted as prohibiting the circuit court from disqualifying an accused's chosen counsel when there is an actual conflict or a serious potential conflict of interest.

For the reasons set forth, we affirm the order of the circuit court.

*By the Court.*—The order of the circuit court is affirmed.