STATE of Wisconsin, Plaintiff-Respondent,

v.

Eugene N. DADAS, Defendant-Appellant.

Court of Appeals

*No. 94–0942–CR. Submitted on November 11, 1994.—Decided December 21, 1994.*

(Also reported in 526 N.W.2d 818.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Stephen J. Meyer, Meyer Law Office* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Paul Lundsten*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J.    Eugene N. Dadas contends that he was denied effective assistance of counsel at his sentencing on commercial gambling charges because his attorney had a conflict of interest. We conclude that an active conflict of interest existed because Dadas's attorney represented another defendant who, at the attorney's suggestion, provided incriminating information about Dadas to law enforcement. Therefore, we vacate Dadas's sentence and remand for resentencing.

Dadas was arrested at home during the 1993 National Football League championship games as part of the culmination of an investigation of commercial gambling in the Fox River Valley. Among the many others arrested was Warren Wilcox.

Shortly after his arrest, Wilcox called Attorney Joseph Hildebrand at home and Hildebrand went to the Winnebago county district attorney's office to give legal advice to Wilcox. Hildebrand also received a call from Dadas's brother and agreed to represent Dadas. Hildebrand immediately told Dadas and Wilcox about

the potential conflict of interest if he would represent both of them. He also advised Dadas about the potential conflict of interest in a letter two weeks later. Dadas received the "conflicts letter" and returned a signed copy to Hildebrand, waiving any potential conflict of interest.

After discussions with the district attorney's office, Hildebrand told Dadas and Wilcox that if they cooperated with local authorities and gave full and truthful statements, the cases would not be referred to the United States attorney and the district attorney would not request any prison time. Hildebrand restated this advice in the "conflicts letter" he sent to Dadas. As a result of Hildebrand's advice, Dadas and Wilcox gave statements to the investigating officers incriminating each other and themselves.

Approximately two months after the arrest, Dadas was charged in a criminal complaint with two counts of commercial gambling, § 945.03(2), STATS., and one count of being a felon in possession of a firearm, § 941.29, STATS. Wilcox was charged separately with two counts of commercial gambling.

During plea negotiations, Hildebrand gathered that the State would be recommending sentences based on each defendant's culpability. For Dadas, the State would be recommending nine to twelve months in jail, a fine, probation and restitution for costs of the investigation. For Wilcox, the recommendation would be six to nine months in jail, a fine, probation and restitution.

Dadas waived his preliminary examination and, subject to the plea negotiations, entered "no contest" pleas. The trial court was aware that Hildebrand was representing both Dadas and Wilcox. The court never conducted a colloquy with Dadas to discover if he was aware of the potential conflict of interest that might

arise with Hildebrand representing both Wilcox and him, and if he voluntarily and knowingly waived his right to be represented by separate counsel.

The trial court found Dadas guilty of all three counts. Dadas received consecutive two-year stayed prison terms and he was placed on six years of probation. Among the conditions of probation was one year in the county jail with work release privileges, a fine and restitution for costs of the investigation.

Dadas filed a motion for postconviction relief under RULE 809.30, STATS., seeking a vacation of his sentence and resentencing before a different judge.[1] In support, Dadas claimed that Hildebrand provided ineffective assistance of counsel because of the conflict of interest that arose from counsel's parallel representation of Dadas and Wilcox. The trial court denied Dadas's motion. The court admitted that it did not engage in a personal colloquy with Dadas as required in *State v. Kaye,* 106 Wis. 2d 1, 14, 315 N.W.2d 337, 342 (1982), but noted that there were no consequences for such a failure. The court went on to find Hildebrand's testimony believable that he did not forego any argument at Dadas's sentencing because he also represented Wilcox. Finally, the court found that Hildebrand's argument at sentencing was comprehensive and his representation of Dadas was not ineffective.

An allegation that counsel was ineffective because of conflicting interests does not require analysis under the performance and prejudice tests established in *Strickland v. Washington,* 466 U.S. 668 (1984). Rather, the analysis begins with the proposition that an actual

[1] Dadas does not raise a challenge to the plea agreement or the acceptance of his plea; therefore, he has waived his right to the review of his plea.

conflict of interest adversely affects a lawyer's perform-ance. *Kaye,* 106 Wis. 2d at 8, 315 N.W.2d at 340. Specific prejudice need not be shown if the defendant demonstrates by clear and convincing evidence that trial counsel actively represented a conflicting interest. *State v. Foster,* 152 Wis. 2d 386, 392, 448 N.W.2d 298, 301 (Ct. App. 1989).

In this appeal, we are at a disadvantage because, as the trial court candidly admitted, it failed to conduct the inquiry mandated in *Kaye. Kaye*, 106 Wis. 2d at 14, 315 N.W.2d at 342. We do not have before us any record in which the trial court explored possible conflict of interest with the defendant or trial counsel. The trial court accurately pointed out that the mandate in *Kaye* did not specify any consequences in the event the collo-quy is not conducted.

We have two alternatives available where a trial court fails to carry out a mandate laid down by the supreme court exercising its superintending and administrative authority.

The first alternative is outright reversal and a remand to the trial court for resentencing. If we adopted this alternative, we would conclude that the *Kaye* requirement of a voluntary and knowing waiver of the right to separate counsel was intended as an easily applied test to evaluate conflict of interest claims. *See id.* The requirement was imposed as a result of the practical difficulty of proving an actual conflict by clear and convincing evidence. *Id.* The supreme court's application of the rule prospectively, thereby not affecting proceedings prior to the decision, indicates that noncompliance was intended to have consequences. Reversal would be an appropriate sanc-tion because we cannot otherwise determine whether a

defendant knowingly waived the right to separate counsel. We would therefore construe the *Kaye* requirement to be as mandatory as *Miranda* warnings and the procedures for accepting a guilty plea. *See State v. Bartelt*, 112 Wis. 2d 467, 480, 334 N.W.2d 91, 97 (1983).

The second alternative would be to conclude that where the trial court has failed to follow *Kaye*, we will review the conflict of interest issue on appeal de novo. As an error-correcting court, we would independently review the record to ascertain from the facts and circumstances if there was an actual conflict of interest. This alternative is attractive because it provides for judicial scrutiny of the facts and a sorting out of those cases in which there was an actual conflict of interest from those cases in which the conflict of interest is nothing more than speculative. As the supreme court noted in *Kaye*, "What constitutes an actual conflict, as opposed to the potential conflict always present with multiple representation, is a difficult question which must be resolved by looking at the facts of an individual case." *Kaye*, 106 Wis. 2d at 13, 315 N.W.2d at 342. We choose the second alternative because its use will result in limiting outright reversals to those cases in which the record demonstrates an active and actual conflict of interest.

Our review in this appeal is aided by the fact that a *Machner*[2] hearing was conducted in the trial court and we have available Hildebrand's recollections of his representation of Dadas and Wilcox. Hildebrand testified that he urged Dadas and Wilcox to cooperate fully with law enforcement after the district attorney promised not to refer the case to federal authorities and not to ask for prison time if there was full cooperation. It is

---

[2] *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905, 908 (Ct. App. 1979).

plain from the record that Dadas and Wilcox took Hildebrand's advice; their cooperation included providing incriminating information about each other to law enforcement and to a probation agent.

The complaint contains a summary of Wilcox's statements, including a statement incriminating Dadas: "Warren Wilcox further states that although he is in competition with Eugene Dadas, he and Dadas compare spreads and lay off bets to each other on a regular basis." Not only did Wilcox cooperate with law enforcement after his arrest, he also provided detailed information to the probation agent assigned to write Dadas's presentence investigation. At the *Machner* hearing Hildebrand testified:

> I believe, Mr. Wilcox had done some records, which were turned over to Mr. Nelezen from the Probation Office. And I believe a pretty rough estimate would have been between eight-hundred thousand to a million dollars. For example, the last year would have been bets that were placed by Mr. Dadas into Mr. Wicox's operation.

Attorney Hildebrand made use of records kept by Wilcox during Dadas's sentencing when he used those records to provide details of the bets Dadas either placed or laid off with Wilcox.

We conclude that Hildebrand did have an actual conflict of interest because at his urging Wilcox cooperated with law enforcement and provided incriminating information about Dadas's betting history and bets that Dadas "laid off" with Wilcox. The information Wilcox provided did serve as a portion of the probable cause in the criminal complaint and could serve as a basis for additional criminal charges, either federal or state, against Dadas. There is a conflict of interest

346

where incriminating information voluntarily supplied by one client is used to provide evidence of another client's criminal activities, expose another client to potential criminal prosecution, or provide justification for a sentencing recommendation or a sentence.

We are satisfied that Hildebrand did not intentionally use any of the information Wilcox provided to law enforcement to further incriminate his client. In fact, it is evident from the context of Hildebrand's remarks at the sentencing hearing that the information was used in an attempt to demonstrate to the trial court that Dadas had not profited from his gambling enterprises. However, Hildebrand's intentions do not change the nature of this incriminating information.

Dadas is entitled to a resentencing. Our independent review of the record establishes that there is clear and convincing evidence that at sentencing Hildebrand actively represented a conflicting interest. Therefore, we vacate Dadas's sentence and remand with directions to the trial court to conduct a new sentencing independent from the conflicting interests in Hildebrand's representation.

*By the Court.*—Order reversed and cause remanded with directions.