State of Wisconsin, Plaintiff-Respondent,
v.
Ronnie L. Ringold, Defendant-Appellant.
No. 04-0355-CR.
Court of Appeals of Wisconsin.
Opinion Filed: November 24, 2004.
Before Anderson, P.J., Nettesheim and Snyder, JJ.
¶1 NETTESHEIM, J.
Ronnie L. Ringold appeals from a judgment of conviction for burglary, party to the crime, as a habitual criminal contrary to WIS. STAT. §§ 943.10(1)(a), 939.05(1) and 939.62(2) (2001-02).[1] Ringold contends that the trial court erred in denying his request for an adjournment to obtain substitute counsel. Ringold additionally appeals from an order denying his motion for postconviction relief on grounds of ineffective assistance of counsel. We reject Ringold's arguments and affirm the judgment of conviction and postconviction order.

BACKGROUND
¶2 On January 25, 2002, the State filed a criminal complaint charging Ringold with the burglary of William Nordstrom Jewelers, as a party to the crime, contrary to WIS. STAT. §§ 943.10(1)(a) and 939.05(1). The complaint alleged the following. On December 3, 2001, Detective Chad Wagner of the Milwaukee police department was dispatched to a disorderly conduct incident involving Ringold and his live-in girlfriend, Tamara Thompson.[2] As part of his investigation, Wagner interviewed Thompson, who reported that Ringold had been involved in a series of burglaries. In particular, Thompson indicated that three weeks prior, Ringold had a plastic bag containing four gold rings. Ringold admitted to Thompson that he had broken into a jewelry store, took the rings, later sold the rings to Lisbon Loans, and had later purchased them back. The owner of Lisbon Loans later confirmed that Ringold had pawned two men's rings on or about October 29, 2001, and still later purchased them back. As a result of the investigation, a gold ring identified by William Nordstrom Jewelers as being one of the rings taken in the burglary, was recovered at the residence of Ringold's mother. Additional items of stolen property were recovered from Ringold's residence and supporting evidence of his involvement in the burglary was later recovered during a search of his vehicle, which Thompson indicated had been used in the burglary.
¶3 A preliminary hearing was held on March 8, 2002, at which the trial court heard testimony from both Wagner and Thompson. At this hearing, Thompson recanted her prior statements to Wagner that had implicated Ringold in the burglary. Nonetheless, Ringold was bound over for trial. On March 19, 2002, the State filed an Information realleging the charge of burglary as a party to the crime and further alleging that Ringold was a habitual offender.
¶4 The matter was scheduled for a jury trial on July 16, 2002. That morning, prior to jury selection, Ringold requested an adjournment to retain substitute counsel. His trial counsel, Attorney William R. Kerner, supported Ringold's request. The State objected to Ringold's adjournment request. After confirming that Kerner was prepared to proceed, the trial court denied Ringold's request.
¶5 At trial, the State presented the testimony of various witnesses, including Thompson and the owner of the jewelry store, William Nordstrom. Thompson recanted her preliminary hearing testimony and instead testified consistent with the information she had originally supplied implicating Ringold in the burglary. The defense presented the testimony of its private investigator, Cory Lieb, who had obtained a statement from Thompson recanting her prior statements to the police. The jury returned a guilty verdict and the matter proceeded immediately to sentencing. Ringold was sentenced to thirteen years of initial confinement followed by five years of extended supervision, consecutive to the sentence Ringold was serving at the time.
¶6 On March 18, 2003, Ringold, acting pro se, filed a motion for postconviction relief. The trial court subsequently ordered the appointment of postconviction counsel for Ringold, and on September 26, 2003, Ringold, now represented by counsel, filed a further motion for postconviction relief. Ringold's motion alleged that trial counsel was ineffective for failing to file a motion to suppress the warrantless search of his vehicle and by failing to call certain witnesses to impeach Thompson's testimony. Ringold additionally alleged that the trial court erred in denying his request for an adjournment to obtain substitute counsel.
¶7 The trial court held a Machner[3] hearing on December 5, 2003. Kerner testified, as well as two individuals who were not called to testify at trial but who may have impeached Thompson's testimony. At this hearing, Ringold raised for the first time a conflict of interest issue pertaining to Kerner's representation. Ringold alleged that Kerner had a conflict of interest because Thompson, a State witness, had provided Kerner with a partial payment of his attorney's fee. Kerner had never revealed this potential conflict to the court, nor had he obtained Ringold's written approval of this arrangement. Because this issue was raised for the first time, the court provided the parties the opportunity to submit briefs on the issue. On January 23, 2004, the court issued an oral decision denying Ringold's motion for postconviction relief. Ringold appeals.
¶8 Additional facts will be provided as they pertain to the appellate issues.

DISCUSSION

Ineffective Assistance of Counsel
¶9 Ringold renews his postconviction argument that trial counsel was ineffective for (1) failing to file a motion to suppress the warrantless search of his vehicle, (2) failing to call witnesses to impeach Thompson's credibility, and (3) accepting attorney fees from Thompson.
¶10 To demonstrate ineffective assistance of counsel, the defendant must show that the attorney's performance was deficient and that such performance prejudiced the defense. State v. Pitsch, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). A reviewing court need not address the performance prong if the defendant has failed to show prejudice and vice versa. Strickland v. Washington, 466 U.S. 668, 697 (1984). To prevail, the defendant must show that the attorney's representation fell below an objective standard of reasonableness. Id. at 688. We indulge in a strong presumption that counsel acted reasonably within professional norms. State v. Trawitzki, 2001 WI 77, ¶40, 244 Wis. 2d 523, 628 N.W.2d 801.
¶11 As to prejudice, it is not enough for a defendant to merely show that the alleged deficient performance had some conceivable effect on the outcome; rather, the defendant must show that, but for the attorney's error, there is a reasonable probability that the result of the trial would have been different. State v. Erickson, 227 Wis. 2d 758, 773, 596 N.W.2d 749 (1999).
¶12 A claim of ineffective assistance of counsel presents a mixed question of fact and law. State v. O'Brien, 223 Wis. 2d 303, 324-25, 588 N.W.2d 8 (1999). Upon appellate review, we will affirm the trial court's findings of historical fact concerning counsel's performance unless those findings are clearly erroneous. Id. However, the ultimate question of effective assistance of counsel is one of law, subject to independent review. Id. at 325.

Search of Ringold's Vehicle
¶13 Ringold's claim that trial counsel was ineffective for failing to file a motion to suppress the warrantless search of his vehicle is grounded on a discrepancy in the dates noted on the Inventory of Items recovered from Ringold's vehicle and the Affidavit and Search Warrant issued by the court commissioner. While both the Inventory of Items and the search warrant were filed on December 4, 2001, the date written on the Inventory indicates that the items were recovered on December 3, 2001, the day before the search warrant was issued.
¶14 At trial, Wagner testified that on December 2, 2001, while at Thompson's apartment, Thompson indicated that Ringold was driving a brown two-door Cadillac Eldorado at the time of the burglary. Wagner saw the vehicle parked at the apartment at that time. The police later seized Ringold's vehicle.
¶15 Detective Leon Bosetti of the Milwaukee County Police Department testified that he assisted in the search of Ringold's vehicle on December 4, 2001, and that the search was authorized by a search warrant. During the search of Ringold's vehicle, the police recovered, among other things, a brown cloth ski mask, leather gloves, and two claw hammers. Ringold's trial counsel did not file a motion to suppress the items recovered from Ringold's vehicle.
¶16 At the postconviction Machner hearing, Ringold's trial counsel testified that he had not noticed the discrepancy in the dates entered on the inventory and the search warrant. However, he further testified that he had "other information that [the search] was done on [December] 4th." Specifically, trial counsel referenced Bosetti's written police reports, which indicated that the search of the vehicle was conducted on December 4, 2001, pursuant to a search warrant. Trial counsel also indicated his belief that even if the search was conducted prior to obtaining a warrant, it fell under the "automobile exception" to the warrant requirement.
¶17 The trial court agreed with trial counsel that the search of Ringold's vehicle fell under the "automobile exception" to the search warrant requirement.[4] "[U]nder current federal law, the warrantless search of a vehicle does not offend the Fourth Amendment if (1) there is probable cause to search the vehicle; and (2) the vehicle is readily mobile." State v. Marquardt, 2001 WI App 219, ¶31, 247 Wis. 2d 765, 635 N.W.2d 188. Here, Ringold does not challenge the probable cause to search his vehicle and we are not otherwise concerned by the fact that the car was seized and impounded before it was searched. "The Supreme Court has held that the justification to conduct a warrantless search does not vanish once the car has been immobilized." Id., ¶43 (citing United States v. Johns, 469 U.S. 478, 484 (1985); see also Michigan v. Thomas, 458 U.S. 259, 261 (1982) ("It is thus clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized."). When police officers have probable cause to believe there is contraband inside an automobile, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody. Thomas, 458 U.S. at 261.
¶18 Based on the automobile exception to the search warrant requirement, trial counsel correctly determined that a motion to suppress would have been pointless. As such, counsel's performance was objectively reasonable.

Failure to Call Witnesses
¶19 Ringold next contends that trial counsel was ineffective for failing to investigate and present the testimony of his sisters, Rita Lewis and Brenda Lewis. Prior to trial, Ringold alerted counsel that both Rita and Brenda had knowledge of Thompson's bias against him. In affidavits and postconviction testimony, both Rita and Brenda described Thompson as an unstable individual who had threatened Ringold on numerous occasions and had him arrested for crimes he did not commit or for past crimes. Ringold contended that these witnesses would have served to impeach Thompson's initial statements to the police and her testimony at trial implicating Ringold in the burglary.
¶20 At the Machner hearing, trial counsel testified that he chose not to present the testimony of Brenda and Rita for strategic reasons. Specifically, he feared that if he questioned Brenda and Rita regarding Thompson's threats to report Ringold for other crimes, he would open the door to testimony from Thompson regarding other burglaries in which Ringold may have been involved. Counsel also questioned the admissibility of Rita's and Brenda's opinions regarding Thompson's credibility and, even if allowed, counsel concluded that it would have had "very limited beneficial effect and could have blown up in [Ringold's] face."
¶21 We conclude that trial counsel's decision to forego calling Ringold's sisters was reasonable strategy and did not amount to ineffective assistance of counsel. First, Ringold has failed to establish a reasonable probability that his sisters' testimony would have produced a different resultneither witness could cite to any instance in which Thompson had been untruthful and neither had any knowledge as to whether Ringold had in fact committed the crimes Thompson had previously threatened to report. See State v. Eckert, 203 Wis. 2d 497, 513, 553 N.W.2d 539 (Ct. App. 1996) (if a defendant claims ineffective assistance of counsel due to failure to investigate a potential witness, the defendant must prove that the prospective witness's testimony would have influenced the outcome of the trial).
¶22 Second, trial counsel reasonably believed that the sisters' testimony would likely benefit the State more than Ringold because it carried the risk of permitting the State to rehabilitate Thompson by having her reveal other crimes committed by Ringold. See id. at 513, 515 (if the prospective witness's testimony would have been more helpful to the State than to the defense, or if the testimony would not have helped the defense's case, then counsel's failure to call the witness is neither deficient nor prejudicial).
¶23 Finally, we are mindful that our role on appeal is not to second guess trial counsel's selection of trial tactics or the exercise of professional judgment after weighing the alternatives. See State v. Felton, 110 Wis. 2d 485, 502, 329 N.W.2d 161 (1983). Where, as here, a strategic decision is based upon rationality founded on the facts and law, counsel is not deficient. See id. In light of Rita's and Brenda's testimony and the attending facts of this case, we conclude that trial counsel's decision to forego calling Rita and Brenda to testify at trial was a reasonable one.

Potential Conflict of Interest
¶24 Ringold contends that counsel was ineffective for accepting a portion of his attorney's fee from Thompson, who provided key testimony for the State against Ringold. Ringold contends that this created a conflict of interest, depriving him of the right to adequate representation and a fair trial pursuant to State v. Miller, 160 Wis. 2d 646, 653, 467 N.W.2d 118 (1991) ("An actual conflict or serious potential for conflict of interest imperils the accused's right to adequate representation and jeopardizes the integrity of the adversarial trial process and the prospect of a fair trial with a just, reliable result.").
¶25 This issue arose for the first time at the Machner hearing.[5] Trial counsel testified that early in his representation, Ringold directed him to Thompson, his fiancée, for payment of part of his attorney's fee. At the time, trial counsel was not aware that Thompson was not "on [Ringold's] side." Trial counsel did not believe that the payment created a conflict of interest and did not believe that Thompson, who had made the payment on Ringold's behalf, would expect to receive any benefit as a result. However, trial counsel acknowledged that he never informed the court that he had received a portion of his attorney's fee from Thompson.
¶26 In State v. Love, 227 Wis. 2d 60, 594 N.W.2d 806 (1999), our supreme court set out the principles governing a conflict of interest claim when first raised in a postconviction setting:
In order to establish a Sixth Amendment violation on the basis of a conflict of interest, a defendant who did not raise an objection at trial must demonstrate by clear and convincing evidence that his or her counsel had an actual conflict of interest. Determining what constitutes an actual conflict of interest must be resolved by looking at the facts of the case. An actual conflict of interest exists when the defendant's attorney was actively representing a conflicting interest, so that the attorney's performance was adversely affected. Once an actual conflict of interest has been established, the defendant need not make a showing of prejudice because prejudice is presumed. Counsel is considered per se ineffective once an actual conflict of interest has been shown.
Id. at 71.
¶27 In evaluating Ringold's claim, we will not overturn the trial court's findings of fact concerning the circumstances of the case and counsel's conduct and strategy unless the findings are clearly erroneous. See id. at 67. However, as noted above, whether counsel's performance was deficient and whether the deficient performance prejudiced the defendant are questions of law. Id.
¶28 Here, the trial court found that when Kerner received the money from Thompson, she was again on a friendly basis with Ringold. This was borne out by the fact that Thompson recanted her accusations against Ringold at the preliminary hearing.[6] It was only later that she returned to her initial unfriendly status to Ringold and "re-recanted" during her testimony at the trial. Thus, at the time Kerner received the money from Thompson, he was not, in the words of Love, "actively representing a conflicting interest, so that the attorney's performance was adversely affected." Id. at 71. This is borne out by the trial court's further finding that Kerner's receipt of money from Thompson had not resulted in a less favorable or less aggressive representation of Ringold or in challenging Thompson as a prosecution witness. Finally, insofar as Ringold believed Kerner was deficient in failing to call his sisters to challenge Thompson's testimony, the trial court found Kerner's decision to be reasonable and we have similarly upheld that decision.
¶29 In conclusion, we hold that Ringold failed to prove by clear and convincing evidence that Kerner had an actual conflict of interest at trial such that he represented Ringold in a manner that adversely affected Ringold's interests. See id. at 81. As such, we reject Ringold's contention that Kerner's representation was ineffective.

Denial of Adjournment
¶30 Ringold argues that the trial court erred in denying his request to adjourn the trial so that he could obtain substitute counsel. On the morning of trial, Ringold requested that he be permitted to obtain substitute counsel because he was dissatisfied with counsel's failure to file a motion to dismiss and a motion to suppress. The trial court denied Ringold's request.
¶31 "Whether counsel should be relieved and a new attorney appointed in his or her place is a matter within the trial court's discretion." State v. Lomax, 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988). A discretionary determination "must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." Id. (citation omitted).
¶32 In evaluating whether a trial court's denial of a motion for substitution of counsel was an erroneous exercise of discretion, we consider a number of factors including:
(1) adequacy of the court's inquiry into the defendant's complaint; (2) the timeliness of the motion; and (3) whether the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case.
Id.
¶33 In addressing Ringold's request on the day of trial, the trial court found that Ringold's request was made at the "eleventh hour" and that he had had several opportunities, prior to the first day of trial, to raise the issue with the trial court. The court further determined that trial counsel was prepared to proceed to trial and that Ringold's reasons for the perceived conflict with trial counsel were not meritorious as trial counsel had reasonable explanations for taking the actions he did. The trial court also found that Ringold's disagreements with trial counsel were not sufficient to warrant an adjournment and noted that trial counsel had a good reputation and was always a prepared and solid advocate for his clients. In denying Ringold's motion, the trial court also took into account the rights of the victim and the public to have the matter resolved.
¶34 In addition, the trial court discounted the credibility of Ringold's testimony. While Ringold asserted that he knew as early as April, some three months before the trial date, that he wanted different trial counsel, he had taken no steps to obtain another attorney. Moreover, when Ringold asked for the adjournment on the morning of the scheduled trial, he still had no idea who would be representing him. Rather, the trial court found credible trial counsel's testimony that while he and Ringold had had strategic disagreements, counsel was aware of Ringold's concerns regarding their strategy and that he had met with Ringold on a number of occasions and had maintained a cordial relationship up until two days before trial.
¶35 In denying Ringold's request to adjourn, the trial court noted Ringold's appearances with trial counsel at hearings after Aprila May 3 status conference, a July 2 motion hearing, and a July 12 jury status conferencewhere Ringold failed to raise any of the concerns he registered on the morning of the trial. Ringold also failed to inform trial counsel of his wishes when they met on July 13 to prepare for trial. In short, the first time Ringold requested that trial counsel withdraw was on July 16, the day of trial, after the witnesses and potential jurors had been assembled.
¶36 In reaching its decision, the trial court made a reasonable inquiry into the reasons for Ringold's request and the level of trial counsel's preparedness. Given that trial counsel was competent and prepared to proceed with the case and Ringold would be receiving adequate representation, we conclude that the public interest in the efficient administration of justice supports the trial court's exercise of discretion in denying Ringold's motion to adjourn.

CONCLUSION
¶37 We hold that Ringold failed to prove that he received ineffective assistance of counsel at trial. We further hold that the trial court properly exercised its discretion when it denied Ringold's eleventh-hour request for an adjournment in order to find substitute counsel. We therefore affirm the judgment of conviction and order denying postconviction relief.
By the Court.  Judgment and order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] The criminal complaint refers to Tamara Thompson as "Tamara Coleman." For ease of reference, we will refer to this witness as Tamara Thompson or "Thompson."
[3] State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).
[4] The trial court also determined that Ringold had failed to demonstrate any prejudice as the result of trial counsel's failure to file a motion to suppress. We need not address this holding since we conclude under the first prong of ineffective assistance of counsel methodology that counsel's decision was reasonable under the "automobile exception" to the search warrant requirement.
[5] Although we conclude that Kerner did not have an actual conflict of interest, we observe that our supreme court has said that the better practice, and in some instances the required practice, is to bring the potential conflict question to the attention of the trial court immediately when the prospect of a conflict rears its head. See State v. Kaye, 106 Wis. 2d 1, 14, 315 N.W.2d 337 (1982), overruled on other grounds by State v. Miller, 160 Wis. 2d 646, 467 N.W.2d 118 (1991); and State v. Love, 227 Wis. 2d 60, 72-73; 79-81, 594 N.W.2d 806 (1999). That procedure allows the court to resolve any potential conflict of interest early on in the proceedings, thereby avoiding the taint to the ensuing proceedings if an actual conflict of interest existed. See Love, 227 Wis. 2d at 81. We appreciate that the supreme court recommended this practice in multiple representation cases (Kaye) and serial representations cases (Love). However, we discern no reason why the same precautions should not apply in a single representation case such as the instant case.
[6] Ringold's argument depicts Thompson as the direct source of the money paid to trial counsel. However, the trial court found that Thompson had acted as a conduit to deliver the funds that derived from Ringold or his associates and his family.