Phillip W. HARVEY, Petitioner–
Appellant,

v.

Superintendent Gary McCAUGHTRY,
Respondent–Appellee.

No. 91–3520.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1993.

Decided Dec. 8, 1993.

Jerold S. Solovy, Darryl M. Bradford, Cecelia M. Comito (argued), Jenner & Block, Chicago, IL, for petitioner-appellant.

Michael R. Klos, Asst. Atty. Gen. (argued), Madison, WI, for respondent-appellee.

Before BAUER, Circuit Judge, WOOD, Jr., and ESCHBACH, Senior Circuit Judges.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

On December 11, 1984, a Wisconsin State Court found Phillip Harvey guilty of one count of kidnapping and three counts of armed robbery based upon his guilty pleas, and seven counts of first-degree sexual assault based upon his no contest pleas under *North Carolina v. Alford.*[1] For these crimes, the court sentenced him to 100 years in prison. Six months after sentencing, Harvey filed a motion to withdraw his pleas, claiming that they were not knowing and intelligent and that he was denied effective assistance of counsel. Although the Wisconsin Court of Appeals reversed the trial court's denial of his motion, the Wisconsin Supreme Court ultimately reversed the appellate court and reinstated the pleas, 139 Wis.2d 353, 407 N.W.2d 235. Harvey then filed this petition for a writ of habeas corpus raising the same grounds for relief that he had raised in state court. The district court rejected the petition and this appeal followed.

## I. BACKGROUND

### A. Facts

A full understanding of this case requires a discussion of the events that began unfolding the evening of July 14, 1984 and continued throughout the night. In a parking lot in downtown Milwaukee, a woman got out of her car only to be seized by two men unknown to her (suspects A & B). The men pointed a long-barrelled handgun at her head and ordered her back into her car. After looting her personal property (money and jewelry), the two men blindfolded the woman with a swatch of cloth they had severed from her skirt and began a string of sexual assaults. Upon encouragement from suspect A, suspect B forced the woman to engage in a number of sexual acts. He had the gun pressed in her side throughout most of the attack. Soon thereafter the assailants swapped positions and suspect A began sexual assaults upon the woman. He too held her at gunpoint; but now the gun was pointed at her head.

Afterwards, the men stowed the blindfolded victim in the trunk of her car. They then drove the car to several "party spots" where they proceeded to open the trunk and display the victim to their acquaintances. The onlookers laughed at the victim's misery and lauded the assailants for their deeds. Only after suffering through this humiliation was the victim finally released. Following this assault, the suspects also apprehended two other women and, holding them at gunpoint, absconded with their money and jewelry.

During the investigation that followed these attacks, Milwaukee police obtained a statement from a juvenile who admitted his involvement in the crimes. Later the police visited the home of Mollie Harvey, petitioner's mother. Mrs. Harvey consented to allow the officers to search for her son, Phillip Harvey. In his bedroom, in plain view on the top of petitioner's bureau, the police noticed three rings that Mrs. Harvey was unable to identify. Believing the rings belonged to the victims, the police later returned to the house with a search warrant and seized among other evidence, the three rings. Shortly thereafter, the petitioner voluntarily gave a statement to the police in which he admitted kidnapping and robbing the first victim, and also admitted putting her in the trunk and displaying her to friends. Additionally he admitted being involved in the robberies of the other two women. He told the police that the juvenile sexually assaulted the first victim but maintained that, other than forcing the victim to perform oral sex, he did not assault her. He was ultimately charged with three counts of armed robbery, one count of kidnapping while armed, and seven counts of first-degree sexual assault. Mrs. Harvey hired Alan D. Eisenberg to represent her son.

### B. Proceedings

On December 11, 1984, the petitioner appeared in court on the above charges and entered guilty pleas on the armed robbery and kidnapping charges and *Alford* no contest pleas to the sexual assault charges. The state trial court accepted the pleas, entered a finding of guilt on all eleven counts, and

---

**1.** 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

sentenced petitioner to 100 years [2] in prison. On August 26, 1985, the petitioner, then represented by new counsel, filed a motion to withdraw his pleas alleging that he did not enter them knowingly and intelligently, and that he did not receive effective assistance of counsel. The state trial court denied the motion. Upon review, the Wisconsin Court of Appeals held that the actions of attorney Alan Eisenberg denied the petitioner effective assistance of counsel and allowed the petitioner to plead anew. The Supreme Court of Wisconsin reversed the appellate court and reinstated the pleas. This petition followed in the United States District Court, which denied the requested relief.

## II. ANALYSIS

The petitioner has raised three arguments to support the claim that his pleas were invalid. First, he claims that his counsel made misrepresentations to him concerning the sentence he would receive if he pled guilty and that these misrepresentations deprived him of effective assistance of counsel. Second, he contends that his counsel acted under a conflict of interest that also deprived him of effective representation. Finally, he has argued that the trial court did not explain the charges adequately enough to enable him to understand them fully and that he therefore did not enter his pleas knowingly and voluntarily.

### A. Ineffective Assistance of Counsel

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth the standards governing claims of ineffective assistance of counsel. To prevail on such a claim, the petitioner must prove: 1) that "counsel's representation fell below an objective standard

of reasonableness," *Id.* at 688, 104 S.Ct. at 2064 and 2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Id.* at 694, 104 S.Ct. at 2068 (i.e. "that the deficient performance prejudiced the defense") *Id.* at 687, 104 S.Ct. at 2064.

█ This two-part test also applies when a defendant challenges the validity of guilty plea proceedings based on claims of ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). In the guilty plea context, the first part of the *Strickland* test remains the same. *Id.* A person who attempts to satisfy the second, or "prejudice," prong of the test, however, "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. at 370.

### 1. Alleged Misrepresentations by Counsel

█ The petitioner claims that prior to the entry of his guilty pleas, his attorney approached him with a piece of paper that had the number "75" written on it. He further claims that the attorney explained that the judge had written that number on the piece of paper and that if the petitioner pled guilty the judge would sentence him to only 75 years in prison.[3] The record, however, reveals that the judge told the petitioner, prior to pleading, that he would be subject to a maximum sentence of 230 years. The record also establishes that the prosecutor was recommending a sentence of 100 years. Nevertheless, based solely on this "promise" of 75 years, the petitioner claims that he decided to waive his constitutional right to a trial and

2. Under Wisconsin law, the petitioner will be eligible for parole in 25 years (Wis.Stat.Ann. § 304.06(1)(b) (West 1991)), and eligible for mandatory release in 67 years (Wis.Stat.Ann. § 302.11(1) (West 1991)).

3. The record contains no evidence to support this contention, and ample evidence to contradict it. First, the attorney himself testified that he never told the petitioner that the judge would enter a sentence of 75 years. According to the attorney, he told the petitioner that the judge was only considering that sentence, that he had the discre-

tion to sentence him for up to 230 years, and that the prosecutor would recommend a sentence of 100 years. Furthermore the piece of paper, if it ever existed, has vanished to parts unknown and neither the petitioner nor his attorney was able to produce it. Based partly on this evidence, Judge Hanley, who presided over the motion to withdraw the pleas, found that the trial judge never wrote the number 75 on a piece of paper, and never entered into any sort of plea negotiation with the petitioner.

plead guilty. He entered his pleas, and the court made a finding of guilt on all counts. Following this, the judge sentenced the petitioner to a prison term of 100 years.[4]

■ The petitioner argues that his attorney's alleged misrepresentations about the sentence the court would impose amounted to objectively unreasonable assistance of counsel and that they induced him to plead guilty and waive his right to trial. In other words, he asserts that had he known he was going to receive a sentence of 100 years (rather than 75) he would have fought the charges and never pled guilty. He raised similar arguments in his motion to withdraw the pleas before Judge Hanley in Wisconsin state court. Judge Hanley held a hearing on the merits of petitioner's claims and made certain findings of fact. As we consider this current petition for habeas corpus relief, the factual findings of the state court "shall be presumed to be correct." 28 U.S.C. § 2254(d) (1988). We will not disregard these findings unless the petitioner shows a procedural defect in the state court proceedings, or demonstrates that the findings are not fairly supported by the record. 28 U.S.C. § 2254(d)(1–8).

Among other things, Judge Hanley found that Mrs. Harvey hired Mr. Eisenberg to represent the petitioner "after he turned himself into the Milwaukee Police Department and confessed to what he was arrested for. . . ." Furthermore, according to Judge Hanley's findings of fact, Eisenberg was hired to represent the petitioner only at sentencing, not to try the case. The record more than adequately supports these findings. First, Mrs. Harvey testified that she hired Eisenberg to see if he could get her son the least possible time in prison, and that she was aware that a guilty plea would probably be the best means for reducing the sentence. The petitioner himself stated that he wanted Eisenberg to get him "the less time as possible." The only reasonable infer-

ence from this is that Eisenberg's role was limited to the guilty plea proceedings and sentencing. The petitioner had no attorney to prepare the case for trial and there is no evidence that he had any intent of hiring an attorney to go to trial.

The record is replete with other indications that Harvey never intended to go to trial. In addition to his own confession, Harvey was aware that there was an abundance of other evidence against him in the case. He was aware that his juvenile companion would testify against him. He was also aware that ample scientific evidence connected him with the attacks. Furthermore he expressed a desire to protect the victim from having to testify at a trial. His attorney, Mr. Eisenberg, stated that Harvey told him, in no uncertain terms, that he did not want to go to trial. Based upon the above information, as found in the record, we hold that there was no reasonable probability that the petitioner would have proceeded to trial; therefore, he has failed his burden under the second prong of the *Strickland–Hill* test. His claim of ineffective assistance in this regard must fail.

### 2. Conflict of Interest

■ Shortly after the events giving rise to this case occurred, several newspapers carried stories about the horrific nature of the crimes. One newspaper, *USA Today,* interviewed Alan Eisenberg, before Mrs. Harvey hired him, and asked for his reaction to the crimes. Mr. Eisenberg stated that "if they catch the guys who did it and prove they did it, I hope they fry in hell." The petitioner contends that this belief on the part of his attorney created a conflict of interest that deprived him of the effective assistance of counsel. This argument is without merit because he has conceded in his brief that he "waived the conflict of interest issue based on the statement made to the press prior to trial."[5] (Petitioner's brief at

---

4. Despite the fact that the petitioner now claims he was promised a sentence of 75 years, he failed to raise any objection at the time of sentencing; rather, he waited six months and first made this contention in his motion to withdraw the pleas.

5. The petitioner argues that, although he waived this conflict of interest he did not waive any "subsequent conflict of interest." He argues further that a subsequent conflict arose when Mr. Eisenberg, only minutes after the petitioner's original waiver, repeated the sentiments ex-

21). The record firmly supports the conclusion that this waiver is valid.[6] The law on this point is quite clear. A defendant who knowingly and intelligently waives his attorney's potential or actual conflict of interest may not, under any circumstances, later claim that such a conflict deprived him of his right to effective assistance of counsel. *United States v. Lowry*, 971 F.2d 55, 63 (7th Cir.1992) (holding "that a valid waiver of the right to conflict-free counsel bars any later claim of ineffective assistance growing from that conflict ..."). Therefore, we reject the petitioner's arguments on this claim.

### B. Voluntariness of the Guilty and *Alford* Pleas

The petitioner's final argument is that we should allow him to withdraw his pleas because they were not knowing and voluntary. He advances two reasons to support his argument: 1) the trial court failed to advise him of each element of the various offenses, and 2) he was promised a sentence of 75 years if he pled guilty. The second claim bears little or no scrutiny. First, as we discussed above, the petitioner has failed to show that any alleged promise of a 75 year sentence affected his decision to plead guilty. Furthermore, he testified in open court that nobody promised him anything in order to encourage him to plead a certain way.

■ The remaining argument that the pleas were involuntary because the court never explained the elements of the offenses is not supported by the law or the facts. The Supreme Court has held that to satisfy due process a plea can be voluntary only if the accused "received 'real notice of the true nature of the charges against him....'"

*Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941)). The petitioner seeks to impose a greater requirement by arguing that giving real notice always requires the court to describe each element of the offense. In *Henderson*, the Court declined to decide "whether notice of the true nature, or substance, of a charge always requires a description of every element of the offense." 426 U.S. at 647 n. 18, 96 S.Ct. at 2258 n. 18. It assumed for the purposes of its analysis, however, that no such requirement existed. *Id.* In that case the trial judge never explained that intent was an element of the offense of second-degree murder, or that the defendant's plea would be an admission of that fact. *Id.* at 646, 96 S.Ct. at 2258. The Court concluded that because "intent is such a critical element of the offense of second-degree murder[,] notice of that element is required." *Id.* at 647 n. 18, 96 S.Ct. at 2258 n. 18.

The petitioner in the present case makes no claim that any particular, critical element was excluded from the description of the charges, or how the lack of such an element deprived him of real notice of the substance of the offenses. If he had, we believe, based on the record, that such a contention would fail. The trial judge carefully read each of the charges and the factual bases for them, which included very detailed, complete information about every offense. We find that the description of the charges provided to Harvey set forth the elements of the various offenses in a manner sufficient to provide the petitioner with the constitutionally required notice of the nature of the charges against him.[7] Furthermore, petitioner's attorney explained each element of the offense to him in

---

pressed in his statement to the press. The second statement, however, did not create a subsequent conflict of interest but was part and parcel of the one and only potential conflict of interest that Mr. Harvey waived.

**6.** The judge presiding over the conflict of interest hearing questioned the petitioner extensively regarding the possible conflict caused by his attorney's sentiments. The transcript of this colloquy consumes five full pages in the record. At the end of the discussion, Mr. Harvey definitively stated that he had considered the matter very carefully, discussed it with his family, and none-

theless felt that no conflict existed and that Mr. Eisenberg would provide the best representation possible.

**7.** For example, the Judge's recitation for Count I included the following information:

Count I—Kidnapping While Armed, Party to a Crime
date, specific location, as party to a crime, while using a dangerous weapon, threat of imminent force, seized the victim, without her consent, with intent to cause her to be held to service against her will.

"very detailed" fashion.[8] Finally, the petitioner himself admitted that he knew the crimes and charges to which he was pleading. For these reasons we hold that the petitioner did receive "real notice" of the nature of the charges to which he pled and his pleas comported with the requirements of due process.

## III. CONCLUSION

The petitioner is not entitled to withdraw his pleas. First, we cannot hold that the alleged misrepresentations of his attorney deprived him of the effective assistance of counsel because he has failed to show a reasonable probability that he otherwise would have proceeded to trial. Second, he waived any potential conflict of interest that may have arisen from the statements and feelings of his counsel; therefore, we will not entertain a claim that such a conflict resulted in ineffective assistance of counsel. Finally, the petitioner possessed sufficient information and notice about the charges to render his pleas knowing, intelligent and voluntary. The decision of the district court is

AFFIRMED.

All of the remaining 10 charges were explained with an equal or greater amount of specificity.

8. In *Henderson,* the Court indicated that the due process requirement of real notice could be satisfied either by "an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused." 426 U.S. at 647, 96 S.Ct. at 2258. In this case the record contains ample evidence of both.