STATE of Wisconsin, Plaintiff-Respondent,

v.

Dion W. DEMMERLY, Defendant-Appellant.†

Court of Appeals

*No. 2005AP181. Submitted on briefs January 19, 2006.
—Decided August 10, 2006.*

## 2006 WI App 181

(Also reported in 722 N.W.2d 585.)

† Petition to review denied 12/5/06.

153

156

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Edward John Hunt* of *Hunt & Quinn S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sally L. Wellman*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Lundsten, P.J., Dykman and Deininger, JJ.

¶ 1. DYKMAN, J.   Dion Demmerly appeals from an order denying his WIS. STAT. § 974.06 (2003–04)[1] postconviction motion. Dion asserts that having attorneys from the same law firm represent him and his co-defendant brother, Douglas Demmerly, created an actual conflict of interest.[2] He contends that the trial court had an obligation to override his waiver of conflict-free representation. Dion also contends that he was denied effective assistance of counsel because the alleged conflict of interest compromised his defense. Finally, Dion contends that his counsel's failure to request a jury instruction on the defense of accident constituted ineffective assistance of counsel. Because we determine that the trial court did not have an obligation to override Dion's waiver of conflict-free representation, we conclude that his waivers were valid. In addition, we conclude that Dion has not met his burden of proving ineffective assistance of counsel based on his attorney's cross-examination of Douglas or his failure to request a jury instruction on accident.

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] Because the two brothers share a surname, we will refer to them by their given names.

## BACKGROUND

¶ 2.  The relevant facts of the case are as follows. On July 3, 1993, someone burglarized Dion Demmerly's fireworks stand. Dion suspected that James Lane was responsible. Dion, his brother, Douglas Demmerly, Douglas's son, Jason Demmerly, and Jason's friend, Brandon Brownlee, followed the suspect to his home. Through the window of Lane's home, Dion saw what he believed was the stolen merchandise. The Demmerlys and the two other men returned home. Dion and Douglas armed themselves and the four men went back to Lane's house. Douglas brought a shotgun and a .22 pistol and Dion carried a double-barreled sawed-off shotgun and a protective vest. When they arrived, James, armed with a .22 caliber rifle, and his brother, Joel Lane, came outside onto the porch and a confrontation ensued regarding the stolen merchandise. Brandon and Jason remained in the car during the argument and left in the midst of the confrontation. The argument intensified and resulted in Dion fatally shooting James. No one witnessed the shooting.

¶ 3.  The State charged Dion with first-degree intentional homicide. The State also charged Douglas as a party to the crime of first-degree intentional homicide. *See State v. Demmerly*, No. 93–2235, unpublished slip op. at 1 (Wis. Ct. App. Mar. 29, 1994). Dion retained Attorney Brian M. Maloney of Appleton, Wisconsin, and Douglas retained Attorney Mary Lou Robinson, of the law firm of Robinson, Robinson, Peterson, Berk & Cross, also of Appleton, Wisconsin. At a preliminary hearing, the trial court dismissed the charges against Douglas based on a lack of probable cause.

¶ 4.  Dion replaced Attorney Maloney with Attorney Avram D. Berk of Robinson, Robinson, Peterson, Berk & Cross. Shortly thereafter, the Oconto County

District Attorney filed a motion asking the trial court to inquire into a possible conflict of interest because Attorney Berk was a member of the same law firm as Attorney Mary Lou Robinson, who continued to defend Dion's brother, Douglas, in the State's appeal of the trial court's dismissal of the charges against Douglas. At a motion hearing, Robinson opposed the motion and stated that Douglas would waive any potential conflict. Attorney Berk also opposed the motion. Dion responded to questions of the court regarding the knowingness of his waiver of the potential conflict and the court accepted his waiver.

¶ 5.   In March 1994, we reversed the order dismissing the complaint against Douglas. *State v. Demmerly*, No. 93–2235, unpublished slip op. at 1 (Wis. Ct. App. Mar. 29, 1994). The State re-charged Douglas, this time with second-degree reckless homicide. As a result, Dion and Douglas became co-defendants again, and the district attorney asked the court to conduct a new inquiry into the potential conflict of interest. During the motion hearing, the court engaged in a colloquy with Douglas and Dion and accepted their waivers of conflict-free representation.

¶ 6.   Dion's trial began in January 1995. Prior to opening statements, Douglas testified as a witness for the State, outside the presence of the jury. Under questioning by the district attorney, Douglas asserted his Fifth Amendment right to remain silent and the State moved to grant Douglas use immunity. The court granted the motion. This ruling led the court to revisit the conflict of interest issue for a third time. Again, the court accepted Dion's and Douglas's waivers of the conflict in having attorneys from the same law firm represent them.

¶ 7.   Dion's theory of the case was that he did not intend to shoot Lane, but that Dion's gun discharged by

accident when he tried to block Lane's gun in self-defense. Dion requested a jury instruction on self-defense, but did not request an instruction on accident. At the conclusion of a seven-day trial, the jury found Dion guilty of first-degree intentional homicide.

¶ 8. In March 1996, Dion filed a motion for postconviction relief challenging evidentiary rulings and alleging discovery violations. He asserted that there was insufficient evidence to support his conviction. The circuit court denied the motion. Dion then retained Attorney Paul Wagner, of the same law firm as Mary Lou Robinson, and appealed the circuit court's denial of his postconviction motion and the judgment of conviction. We affirmed the circuit court's decision. *State v. Demmerly*, No. 96–1898, unpublished slip op. at 4 (Wis. Ct. App. Dec. 27, 1996).

¶ 9. In October 2003, Dion filed a motion for postconviction relief, pursuant to WIS. STAT. § 974.06. In the motion, Dion contended that the performance of Attorney Berk at trial and during postconviction proceedings was ineffective because of the conflict of interest and Berk's failure to request a jury instruction on accident. In addition, Dion asserted that his appellate counsel, Attorney Wagner, was ineffective for failing to raise the conflict of interest issue and for laboring under the same alleged conflict that existed at the trial level because Wagner was a member of Robinson's law firm.[3] Finally, Dion contended that the trial court erroneously exercised its discretion by failing to disqualify Attorney Berk from representing Dion because of a conflict of interest. The circuit court denied the motion and Dion appeals.

---

[3] For the proper procedure on how to challenge the effectiveness of appellate counsel, see *State v. Knight*, 168 Wis. 2d 509, 484 N.W.2d 540 (1992).

## DISCUSSION

### A. *Circuit Court's Acceptance of Dion's Waiver of Conflict-Free Representation*

¶ 10.   Dion contends that the trial court errone-ously exercised its discretion by accepting his conflict of interest waiver, thus allowing Attorney Berk to remain as his counsel. We review a trial court's disqualification decision because of conflict of interest for erroneous exercise of discretion. *See State v. Miller*, 160 Wis. 2d 646, 654, 467 N.W.2d 118 (1991); *see also Wheat v. United States*, 486 U.S. 153, 163 (1988) (holding that trial courts have wide latitude when deciding whether to reject a waiver of conflict-free representation when an actual or potential conflict exists). We will not hold that the trial court erroneously exercised its discretion if the record demonstrates that the trial court in fact exercised dis-cretion and there is a reasonable basis for its conclusion. *State v. Tkacz*, 2002 WI App 281, ¶ 8, 258 Wis. 2d 611, 654 N.W.2d 37.

¶ 11.   Dion refers to case law in which a trial court declined to accept a defendant's waiver of conflict-free representation. *Wheat*, 486 U.S. at 162–63; *Miller*, 160 Wis. 2d at 649; *State v. Kaye*, 106 Wis. 2d 1, 14, 315 N.W.2d 337 (1982). Dion maintains that the trial court's decision to accept his waiver, despite the potential for a serious conflict of interest, was an erroneous exercise of discretion.

¶ 12.   The State correctly asserts that the case law Dion cites does not hold that a trial court must refuse to allow counsel to represent defendants in the same pro-ceeding when an actual or serious potential for a conflict exists. The central issue in *Kaye* was whether the defen-dant had proven ineffective assistance based on his

counsel's representation of a co-defendant at sentencing. *Kaye*, 106 Wis. 2d at 6. We held that Kaye had not proven ineffective assistance of counsel based on this conflict of interest, but we recognized the difficulty of establishing such conflicts when the defendant has not made an objection at trial. *Id.* at 13. Therefore, we instructed trial courts to engage in a colloquy with defendants to ensure that they understand the possibility of a conflict when the same attorney or law firm represents more than one defendant in the same case. *Id.* at 14. If, following the colloquy, defendants choose to waive the right to separate counsel, the trial court should respect their mutual decision. *Id.* at 16. In *Wheat*, the Supreme Court explored a trial court's discretion in this area when deciding whether a court may override a defendant's waiver of the right to conflict-free representation when to do so might interfere with the defendant's Sixth Amendment right to choose one's counsel. *Wheat*, 486 U.S. at 158. The Court held that when a trial court finds an actual or potential conflict of interest, the court may reject the defendant's waiver and require that separate counsel represent the defendant. *Id.* at 162–63. Finally, in *Miller*, the supreme court qualified its holding in *Kaye* and followed the reasoning of *Wheat*, holding that a trial court may, within its discretion, disqualify an attorney, even over the defendant's objection, when there is an actual conflict of interest or serious potential for a conflict of interest. *Miller*, 160 Wis. 2d at 660–61.

■■■■

¶ 13. Contrary to Dion's assertion, none of these cases involve a situation where a trial court accepted a defendant's valid waiver of the right to conflict-free representation.[4] Furthermore, while these cases illus-

---

[4] In *State v. Kaye*, 106 Wis. 2d 1, 5–6, 315 N.W.2d 337 (1982), the defendant did not raise the conflict of interest issue until

trate that a court may use its discretion to disqualify an attorney, none hold that a trial court must reject a defendant's voluntary waiver of the right to conflict-free representation. We find the holding of *United States v. Lowry*, 971 F.2d 55 (7th Cir. 1992), on this issue persuasive. Like Dion, Lowry claimed that the trial court misused its discretion in not disqualifying his attorney due to a serious conflict of interest. *Id.* at 60. The *Lowry* court recognized that *Wheat* provides trial courts with discretionary power to override a defendant's waiver of conflict-free representation. However, "Wheat failed to delineate any instance where the court is required to override the defendant's waiver and disqualify the attorney. In other words, while courts sometimes *can* override a defendant's choice of counsel when deemed necessary, nothing *requires* them to do so." *Id.* at 64. Requiring a court to disqualify an attorney because of a conflict of interest would infringe upon the defendant's right to retain counsel of his choice and could leave the accused with the impression that the legal system had conspired against him or her. *Id.*

¶ 14. Here, the conflict of interest issue arose several times during the proceedings. The record reveals that each time the issue arose, Dion voluntarily and knowingly waived his right to conflict-free representation. On three separate occasions, the trial court conducted a colloquy with Dion regarding the conflict of interest issue and Dion does not contest the adequacy of

after trial in a postconviction motion asserting he was denied effective assistance of counsel during the sentencing. Both *Wheat v. United States*, 486 U.S. 153, 157 (1988), and *State v. Miller*, 160 Wis. 2d 646, 655–56, 467 N.W.2d 118 (1991), involved situations where a defendant voluntarily proffered a waiver of the right to conflict-free representation, but the trial court refused to accept the waiver.

the court's colloquies. The court properly exercised its discretion in allowing Dion to retain the attorney of his choice. In explaining its reasoning the trial court stated:

> [W]e can not lose sight of the fact that Dion and Douglas predicated their defense on the desire for their lawyers to work together in defending both of them. The lawyers were talking and sharing information. The brothers even signed an agreement . . . allowing for free exchange of information and waiving potential conflict.

Given the consistency of Dion's waivers and the trial court's sound reasoning, we conclude that the trial court did not erroneously exercise its discretion in accepting Dion's waivers, or in allowing Attorney Berk to remain as Dion's counsel.

## B. Ineffective Assistance of Counsel

¶ 15. Dion contends that he was denied effective assistance of counsel because his counsel's law firm also represented his co-defendant brother Douglas. *See* U.S. CONST. amend. VI; WIS. CONST. art. I, § 7. Dion asserts that this dual representation created an actual conflict of interest that compromised his defense. Specifically, Dion claims that Attorney Berk's cross-examination of Douglas was deficient because it did not emphasize Douglas's lack of credibility or motivation to testify. However, when Dion validly waived the right to conflict-free representation he necessarily waived the right to assert that his counsel was ineffective because of the alleged conflict. *Lowry*, 971 F.2d at 63. While there is no Wisconsin case law directly on point, the State cites federal cases holding that a defendant cannot assert ineffective assistance of counsel based on a conflict of interest when the defendant validly waived the right to conflict-free representation. Under *Harvey*

*v. McCaughtry*, 11 F.3d 691, 695 (7th Cir. 1993), "[a] defendant who knowingly and intelligently waives his attorney's potential or actual conflict of interest may not, under any circumstances, later claim that such a conflict deprived him of his right to effective assistance of counsel." *See also Gomez v. Ahitow*, 29 F.3d 1128, 1135–36 (7th Cir. 1994) ("[The defendant] knowingly and intelligently waived his right to conflict-free counsel . . . . [The defendant] cannot now be heard to complain that the conflict he waived resulted in ineffective assistance of counsel."); *Lowry*, 971 F.2d at 63 (holding "a valid waiver of the right to conflict-free counsel bars any later claim of ineffective assistance growing from that conflict"); *United States v. Beniach*, 825 F.2d 1207, 1210 (7th Cir. 1987) ("[O]nce having made a knowing and intelligent waiver, a criminal defendant may not later attack his conviction premised upon an assertion of conflict.").

¶ 16.   The *Lowry* court provided the rationale for this rule when it stated "[t]o hold otherwise would be to render the waiver meaningless; a defendant would lose nothing by waiving his right and sticking with counsel who had a conflict, since he could always allege 'ineffective assistance' if convicted." *Lowry*, 971 F.2d at 63. With the caveat discussed below, we adopt the rule established by the Seventh Circuit that a defendant who validly waives his right to conflict-free representation also waives the right to claim ineffective assistance of counsel based on the conflict. *Harvey*, 11 F.3d 691, 695 (7th Cir. 1993).

¶ 17.   We question whether a valid waiver of a conflict of interest should act to bar all ineffective assistance claims where deficient performance is prompted by the waived conflict of interest. There may

be instances in which counsel's performance is deficient *and* unreasonably so even in light of the waived conflict of interest. An example will help explain the small door we leave open today.

¶ 18. Suppose a defendant validly waives a conflict of interest due to counsel's concurrent representation of a co-defendant and later, at trial, counsel is unexpectedly faced with whether he or she should present evidence that has the potential to simultaneously help the co-defendant and hurt the defendant. Suppose counsel opts to present the evidence and that, if this action is viewed solely from the defendant's perspective, it is deficient performance. This is exactly the sort of risk the defendant accepted when choosing to be represented by an attorney who was also obligated to represent the interests of the co-defendant. Thus, defendant's waiver defeats his ineffective assistance claim if counsel's action was reasonable in light of the choice created by dual representation. But what if the evidence seriously harms the defendant with no significant corresponding chance of helping the co-defendant? That is to say, what if counsel's decision is not a reasonable strategic decision, even considering counsel's conflict of interest? Should a valid waiver defeat all ineffective assistance claims, even when counsel's choice is objectively unreasonable, taking into account the conflict? We have no occasion to answer this question today.

¶ 19. Here, Dion claims that Attorney Berk's cross-examination of co-defendant Douglas was deficient and prejudiced Dion's defense and that this alleged deficient performance was prompted by counsel's conflict of interest. But we need not explore whether the possible exception to our conflict-of-interest-waiver rule applies here. Dion's ineffective assistance claim fails because his counsel's cross-examination of Douglas

was not deficient. Therefore, we will analyze Dion's argument as a mine-run ineffective assistance of counsel claim under the framework of *Strickland v. Washington*, 466 U.S. 668 (1984).

¶ 20.    Wisconsin has adopted the *Strickland* test for ineffective assistance of counsel. *See, e.g., State v. Johnson*, 153 Wis. 2d 121, 126, 449 N.W.2d 845 (1990). Under this two-part test, in order to establish ineffective assistance of counsel a defendant must prove (1) that the counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. To prove deficient performance the defendant must show specific acts or omissions that are "outside the wide range of professionally competent assistance." *Id.* at 690. The defendant has the burden to overcome the presumption that the counsel's decisions were based on reasonable professional judgment. *Id.* To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

¶ 21.    A claim of ineffective assistance of counsel contains a mixed question of law and fact. *State v. Thiel*, 2003 WI 111, ¶ 21, 264 Wis. 2d 571, 665 N.W.2d 305. We will not overturn a trial court's findings of fact relating to the circumstances of the counsel's conduct and strategy unless the findings are clearly erroneous. *State v. Love*, 227 Wis. 2d 60, 67, 594 N.W.2d 806 (1999). Whether counsel's performance was deficient and whether the deficient performance prejudiced the defendant are questions of law that we review de novo. *Id.*

¶ 22. The record demonstrates that Attorney Berk's cross-examination of Douglas was not unreasonable. The cross-examination revealed that Douglas's motivation for testifying was based on his desire to receive leniency from the State on his pending charges. For example, Attorney Berk elicited that in July 1994, when Douglas was facing charges for being a party to the crime of second-degree reckless homicide, he met with police, his attorney, and the prosecutor to discuss possible dismissal of his charges. During cross-examination, Douglas admitted that after talking with the police officers, he believed they were going to dismiss the charges. Attorney Berk further cross-examined Douglas as follows:

Q. And have officers tried to contact you to talk to you about this case?

A. Yes.

Q. And about your testimony in this case?

A. Yes.

Q. And during those conversations have they told you facts or theories about the case?

A. Theories about the case, yes.

Q. Have any officers ever tried to tell you that you are wrong and this is how it happened and tried to get you to change your story?

A. Yes.

Q. Have they tried to get you to talk to your son to have him change his testimony?

A. Yes, many times.

168

Q. Did you feel that by talking to them that you would be helping yourself?

A. Yep. Yes.

Q. In fact when you gave that first statement, that very first statement on July 3rd of '93, weren't you told something by the officer who took the statements?

A. Yes.

Q. What did you understand would happen if you gave that statement?

A. That they would help me, that things start up way up here and they end up way down here.

Q. That if you cooperated, they would be easy on you?

A. Um-hmm.

Q. And give you a break?

A. Yeah. I mean yes.

¶ 23. On re-cross-examination, Dion's attorney also elicited the following testimony from Douglas:

Q. Mr. Demmerly, from the time of your arrest, from July 3rd of 1993 and July 11th of 1994 haven't you done everything you could do to make the best arrangement you could possibly make for yourself?

A. Yes.

Q. On the charges that you were facing?

A. Yes.

Q. And you have done everything you could, including having numerous conversations with investigating

169

officers in this case without your attorney present and despite being represented by an attorney?

A.   I have been cooperating probably more than fully on that basis.

¶ 24.   Dion also asserts that Douglas's testimony left the jury with a false impression of Douglas's immunity.[5] However, if there was any confusion as to whether Douglas testified under a grant of immunity, the jury received an instruction that clearly explained Douglas's immunity:

> You have heard the testimony of Douglas Demmerly, who has received immunity. This means that Douglas Demmerly's testimony and evidence derived from that testimony cannot be used in a later criminal prosecution of Douglas Demmerly. This witness, like any other witness, may be prosecuted for testifying falsely. You should consider whether receiving immunity affected the testimony and give the testimony the weight you feel it deserves.

¶ 25.   We conclude Attorney Berk's cross-examination was reasonable and exhibited professionally competent assistance. *See Strickland,* 466 U.S. at 690. Douglas was a key witness for both sides because he was the only other person present about the time the shooting occurred. Attorney Berk had the difficult task of making the jury believe the portions of Douglas's testimony and prior statements that supported Dion and disbelieve the parts of Douglas's testimony that supported the State. Attorney Berk effectively cross-

---

[5] During re-cross-examination, Attorney Berk asked Douglas the following:   "And Mr. Conley has given you complete immunity from anything you say in this proceeding; you understand that don't you?" Douglas answered:   "No, I didn't think I was getting immunity from anything. I didn't understand that."

examined Douglas and elicited Douglas's motivation for testifying. Because Dion did not show that Attorney Berk's performance was deficient we need not address whether the performance was prejudicial. We reject Dion's assertion that Attorney Berk rendered ineffective assistance while cross-examining Douglas.

¶ 26. Dion also contends that he was denied effective assistance of counsel because Attorney Berk failed to request a jury instruction on the defense of accident. We disagree. Dion maintains that he was entitled to this instruction because jury instructions "should fully and fairly state the law that applies to the case." *See State v. Hurd*, 135 Wis. 2d 266, 275, 400 N.W.2d 42 (Ct. App. 1986). Dion also relies on *State v. Watkins*, 2002 WI 101, ¶¶ 33, 44–45, 255 Wis. 2d 265, 647 N.W.2d 244, which held that accident is a long-recognized defense and that accident and self-defense are not necessarily mutually exclusive. Yet, *Watkins* does not address the issue of whether failure to ask for an instruction on accident is objectively unreasonable.

■

¶ 27. We addressed this issue in *State v. Ambuehl*, 145 Wis. 2d 343, 352, 425 N.W.2d 649 (Ct. App. 1988). There, the defendant was convicted of attempted murder and claimed that her counsel's failure to request an instruction on accident constituted deficient performance. In rejecting Ambuel's argument, we reasoned that "[i]ntent to kill is the crux of attempted first-degree murder. All reasonable persons know that intent is the antithesis of accident . . . . For that reason, we reject the view that the trial court must explain to the jury that accident is the opposite of intent." *Id*. We concluded that because the defendant was not entitled to an accident instruction, the attorney's failure to make this request was not deficient performance. *Id*.

Similarly, Attorney Berk's failure to request an instruction on accident was not deficient performance.

*By the Court.*—Judgment and order affirmed.